"**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 13-22333-CIV-ALTONAGA/Simonton**

**YASMICK JEUNE**,

    Petitioner,
vs.

**PAUL CANDEMERES**,[1] *et al.*,

    Respondents.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Petitioner, Yasmick Jeune's ("Jeune['s]") Verified Petition for Writ of Habeas Corpus ("Petition") [ECF No. 1] pursuant to 28 U.S.C section 2241, filed on July 1, 2013. Respondent, Paul Candemeres ("Candemeres"), filed his Response to Petition and Motion to Dismiss ("Response") [ECF No. 8] on August 14, 2013; and Jeune filed a Reply to [the] Respondents' Response to Petition ("Reply") [ECF No. 13] on August 28, 2013. The undersigned has carefully considered the parties' written submissions and applicable law.

### I. BACKGROUND

---

[1] The Petitioner names as Respondents: Candemeres, Assistant Field Office Director of the ICE Miami Field Office and Officer in Charge, Krome Service Processing Center, Miami, Florida; Mark J. Moore, Field Office Director for the ICE Miami Office of Enforcement and Removal Operations; John T. Morton, Assistant Secretary of United States Immigration and Customs Enforcement; Janet Napolitano, the Secretary of the United States Department of Homeland Security; and Eric H. Holder, Jr., Attorney General of the United States Department of Justice. Pursuant to 28 U.S.C. section 2243, a writ of habeas corpus shall be directed to the petitioner's custodian, who, for the purposes of a habeas action, is the warden of the prison where the petitioner is held. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). Petitioner is incarcerated at the Krome Service Processing Center located in Miami, Florida. (*See* Pet. ¶ 4). Accordingly, the proper respondent is Candemeres, the Officer in Charge of the Krome Service Processing Center. (*See also* Notice of Proper Custodian 1 [ECF No. 12] ("Respondent has since learned . . . Paul Candemeres[ is] the immediate custodian of Petitioner Jeune.")). Mark J. Moore, John T. Morton, Janet Napolitano, and Eric H. Holder, Jr. are not the Petitioner's custodians and must be dismissed.

The following facts are not disputed. Jeune is a citizen of Haiti where she[2] was born in 1988. (*See* Pet. ¶ 15; Resp. 2). She emigrated from Haiti to the United States in 2004 and became a lawful permanent resident in January 2006. (*See id.*). On March 6, 2012 Jeune was convicted of possession of cocaine and carrying a concealed firearm in the Circuit Court of the 17th Judicial Circuit in Broward County, Florida. (*See* Pet. ¶ 19; Resp. 2). Jeune was sentenced to time served for the firearm possession charge and six months of probation for the drug possession charge. (*See* Pet. ¶ 20; Resp. 2). On July 11, 2012, over four months after Jeune's release from custody, the Department of Homeland Security detained Jeune and commenced removal proceedings against her under 8 U.S.C. section 1226(c). (*See* Pet. ¶ 21; Resp. 2). An immigration judge determined Jeune was subject to mandatory detention during the removal proceedings, and she has since been held without a bond hearing at the Krome Service Processing Center. (*See id.*).

In the removal proceedings Jeune sought asylum, withholding of removal under 8 U.S.C. section 1231(b)(3)(A),[3] and withholding of removal under the United Nations Convention Against Torture. (*See* Pet. ¶ 22; Resp. 2–3). In support, Jeune alleged past persecution and fear of future persecution and torture as a gay and transgender individual. (*See id.*). On October 30, 2012, at the conclusion of the merits hearing, the immigration judge denied Jeune's requests for relief and ordered her removed to Haiti. (*See* Pet. ¶ 23; Resp. 2–3). Specifically, Jeune's application for asylum was denied due to Jeune's past criminal history. (*See id.*). Jeune's application for withholding of removal under 8 U.S.C. section 1231(b)(3) was denied because the

---

[2] Jeune identifies herself as a transgender individual and refers to herself using female pronouns (*see generally* Pet.); the Court does likewise.

[3] According to 8 U.S.C. section 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

immigration judge found Jeune could likely avoid future persecution by relocating to another part of Haiti. (*See* Resp. 2–3). Lastly, the immigration judge found Jeune was not eligible for withholding of removal under the United Nations Convention Against Torture because she failed to show she was more likely than not to be tortured if she returned to Haiti. (*See* Pet. ¶ 23; Resp. 2–3).

On March 22, 2013 the Board of Immigration Appeals ("BIA") agreed with the immigration judge's determinations and dismissed Jeune's appeal. (*See* Pet. ¶ 23; Resp. 3). Jeune then filed a petition for review with the Eleventh Circuit Court of Appeals, challenging the decision of the BIA. *See* Agency Petition, *Jeune v. U.S. Att'y Gen.*, No. 13-11683 (11th Cir. Apr. 25, 2013). Jeune also filed a motion for a stay of removal pending a decision on the petition for review, *see* Emergency Motion for Stay of Removal, *Jeune v. U.S. Att'y Gen.*, No. 13-11683 (11th Cir. Apr. 30, 2013), which was granted on May 16, 2013, *see* Order: Motion for stay of removal filed by Petitioner Yasmick Jeune is Granted, *Jeune v. U.S. Att'y Gen.*, No. 13-11683 (11th Cir. May 16, 2013). On July 1, 2013 Jeune filed the present Petition seeking a bond hearing. (*See generally* Pet.).

## II. LEGAL STANDARD

Habeas corpus relief extends to a person "in custody under or by color of the authority of the United States" if the person can show she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (c)(3); *see also Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 (11th Cir. 2008) (holding a petitioner's claims are proper under 28 U.S.C. section 2241 if they concern the continuation or execution of confinement). The basic federal habeas corpus statute grants the federal courts authority to answer whether detention is in violation of the laws of the United States. *See Zadvydas v. Davis*,

533 U.S. 678, 699 (2001). The petitioner bears the burden of establishing a right to federal habeas relief. *See Coloma v. Holder*, 445 F.3d 1282, 1284 (11th Cir. 2006).

"[H]abeas corpus is, at its core, an equitable remedy," *Schlup v. Delo*, 513 U.S. 298, 319 (1995), that "[t]he court shall . . . dispose of [] as law and justice require," 28 U.S.C. § 2243. "[C]ommon-law habeas corpus was, above all, an adaptable remedy" and "the court's role was most extensive in cases of pretrial and noncriminal detention." *Boumediene v. Bush*, 553 U.S. 723, 779–80 (2008) (citations omitted). "[W]hen the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority to make a determination in light of the relevant law and facts and to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 787.

### III. ANALYSIS

Jeune argues she was improperly detained under 8 U.S.C. section 1226(c) ("Section 1226(c)"), which prohibits a bond hearing, and instead should have been detained under 8 U.S.C. section 1226(a) ("Section 1226(a)"), which grants a bond hearing. (*See* Pet. ¶¶ 30–31). In the alternative, Jeune argues the Section 1226(c) detention has become unreasonably prolonged and she is now entitled to a bond hearing. (*See id.* ¶¶ 46–48). Respondent argues Jeune was originally detained under Section 1226(c), but the detention shifted to 8 U.S.C. section 1231 ("Section 1231") — the provision governing detention after a final order of removal — on March 22, 2013 when the BIA dismissed Jeune's appeal. (*See* Resp. 5). Respondent asserts the Petition should be dismissed for failure to state a claim since the required six-month period between Jeune's detention under Section 1231 and her filing of the Petition had not elapsed. (*See* Resp. 6 (citing *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (The "six-month period [as established in *Zadvydas*, 533 U.S. 678] must have expired at the time [the P]etition

was filed in order to state a claim under *Zadvydas*.")))· The Court first determines under which statute Jeune is being held, before addressing if her detention has become unreasonably prolonged.

A. **Detention Classification**

1. **Section 1226 vs. Section 1231**

Section 1226 governs the detention of an alien pending a decision on whether the alien is to be removed from the United States. *See* 8 U.S.C. § 1226. Once the decision to remove an alien becomes final, the alien enters the Section 1231 removal period which governs the alien's detention.[4] *See* 8 U.S.C. § 1231; *see also De La Teja v. United States*, 321 F.3d 1357, 1363 (11th Cir. 2003) (holding detention of an alien shifts to Section 1231 when a removal order becomes final). In the immigration context the removal period of Section 1231 begins on the later of: "(i) The date the order of removal becomes administratively final[5][, or] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order."[6] 8 U.S.C. § 1231(a)(1)(B) (footnote added).

> [Section 1231] does not provide authority to detain an alien whose removal order is administratively final, but whose removal *has been stayed by a court of appeals* pending its disposition of [her] petition for review. Such aliens may be detained, however, pursuant to [Section] 1226(a), which allows the Attorney General to detain any alien "pending a decision on whether the alien is to be removed from the United States."

---

[4] The Supreme Court found under Section 1231 "six months is a presumptively reasonable period to detain a removable alien .... Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day [Section 1231] removal period plus 90 days thereafter." *Akinwale*, 287 F.3d at 1051-2 (footnote call number, citation, and internal quotation marks omitted).

[5] A removal order becomes administratively final upon a determination by the BIA affirming the removal order or the expiration of the period to seek review by the BIA. *See* 8 U.S.C. § 1101(a)(47)(B)(i).

[6] There is a third event on which the Section 1231 removal period can begin but it does not apply in this case. *See* 8 U.S.C. § 1231(a)(1)(B) ("(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.").

*Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008) (emphasis added); *see also Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003) ("[W]here a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under [Section 1226] until the court renders its decision."); *Leslie v. Att'y Gen. of the United States*, 678 F.3d 265, 270 (3d Cir. 2012) ("Our review indicates that every circuit to consider the issue has held that [Section] 1226, not [Section] 1231, governs detention during a stay of removal. . . . [Section] 1231 cannot explain nor authorize detention during a stay of removal pending further judicial review." (internal citations omitted)); *Bejjani v. I.N.S.*, 271 F.3d 670, 689 (6th Cir. 2001) (explaining Section 1231 detention does not commence until the removal period begins), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006).

Here the Eleventh Circuit Court of Appeals has issued a stay of removal but has not issued a final order on the petition for review. *See Order:* Motion for stay of removal filed by Petitioner Yasmick Jeune is GRANTED, *Jeune v. U.S. Att'y Gen.*, No. 13-11683 (11th Cir. May 16, 2013). Since Jeune's removal has been stayed by the Eleventh Circuit Court of Appeals pending its disposition of her petition for review, the Section 1231 removal period has not started and she is still detained under Section 1226. *See Prieto-Romero*, 534 F.3d at 1059; *Wang*, 320 F.3d at 147; *Leslie*, 678 F.3d at 270; *Bejjani*, 271 F.3d at 689.

Notwithstanding the holdings of the Second, Third, Sixth and Ninth Circuits as to when detention of an alien shifts to Section 1231, Respondent contends *De La Teja*, 321 F.3d 1357, holds authority for an alien's detention *always* shifts from Section 1226 to Section 1231 when the removal order becomes administratively final. (*See* Resp. 5). The court in *De La Teja* stated:

> [The alien] did not appeal the judgment of the Immigration Judge, and accordingly his removal order became final . . . . This fundamentally changes the procedural posture of the case. Because a final removal order has been entered, [the alien] is no longer being detained pursuant to [Section] 1226(c), which

> governs *only* detention prior to a final removal order. Instead, he is being detained now pursuant to a wholly different statute, [Section] 1231(a), which controls the detention and removal of an alien subject to a final order of removal.

*De La Teja*, 321 F.3d at 1363 (emphasis in original; alterations added). Contrary to Respondent's position, *De La Teja* only demonstrates that Section 1231 detention *can*, but does not necessarily begin when the removal order becomes administratively final. *De La Teja* did not consider an administratively final removal order subject to a stay of removal pending review by an appellate court, but rather considered the decision of an immigration judge that became administratively final when it was not appealed. *See id.* at 1363. Thus Jeune's detention can be differentiated from the one in *De La Teja*, and she remains in Section 1226 detention pending a decision by the Eleventh Circuit on whether she is to be removed from the United States. The Court next determines which subsection of Section 1226 governs Jeune's detention.

### 2. Subsection 1226(a) vs. Subsection 1226(c)

Jeune argues she should be held under Section 1226(a) because she was not detained until more than four months after her release from criminal custody and thus Section 1226(c) cannot authorize her detention. (*See* Pet. ¶¶ 32–45). She asserts the Section 1226(c) reference to "when the alien is released" limits Section 1226(c) detention to aliens who are taken into immigration custody immediately upon release from criminal custody and no others. (*See* Pet. ¶ 33). Notwithstanding whether an alien should be taken into immigration custody immediately upon release from criminal custody, Respondent contends Section 1226(c) mandatory detention still applies to a subsequently detained alien. (*See* Resp. 7–8).

Section 1226 generally allows bond hearings for aliens unless they fall into subsection (c), which imposes mandatory detention on a narrow class of criminal aliens. *See* 8 U.S.C. § 1226. According to subsection (c):

> The Attorney General shall take into custody any alien who [falls into the narrow class of criminal aliens as enumerated by sections 1226(c)(1)(A)–(D)] . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

*Id.* § 1226(c)(1).

The BIA, the administrative agency tasked with interpreting the Immigration and Nationality Act of which Section 1226 is a part, has found an alien "is subject to mandatory detention pursuant to [Section 1226], despite the fact that [she] was not taken into Service custody immediately upon [her] release from state custody." *In re Rojas*, 23 I. & N. Dec. 117 (BIA 2001). Even if Section 1226(c) required immediate detention upon release from criminal custody, a subsequently detained alien is still subject to Section 1226(c) mandatory detention, as "a statute directing official action needs more than a mandatory shall before the grant of power can sensibly be read to expire when the job is supposed to be done." *Sylvain v. U.S. Att'y Gen.*, 714 F.3d 150, 158 (3d Cir. 2013) (internal quotation marks and citation omitted). Moreover, "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *Hosh v. Lucero*, 680 F.3d 375, 381 (4th Cir. 2012) (internal quotation marks and citation omitted) ("Thus, while we agree that Congress's command to the Attorney General to detain criminal aliens when . . . released from other custody connotes some degree of immediacy, we cannot conclude that Congress clearly intended to exempt a criminal alien from mandatory detention and make him eligible for release on bond if the alien is not *immediately* taken into federal custody." (emphasis in original; footnote call number and internal quotation marks omitted)); *see also Silent v. Holder*, No. 4:12-cv-00075-IPJ-HGD, 2012 WL 4735574, at *2–3 (N.D. Ala. Sept.

27, 2012) (agreeing with the holding of the BIA and finding *Hosh* to be persuasive).[7]

Jeune is charged with removability based on her conviction for possession of cocaine and carrying a concealed firearm. (*See* Pet. ¶ 20). These prior convictions place her in the narrow class of criminal aliens who are subject to Section 1226(c) mandatory detention. Jeune was originally and remains detained under Section 1226(c) despite the delay in taking her into immigration custody. The Court next turns to evaluating the reasonableness of the length of Jeune's detention under Section 1226(c).

## B. The Length of Mandatory Detention Under Section 1226(c)

Jeune argues her prolonged detention under Section 1226(c) is presumptively unreasonable as it exceeds six months, or in the alternative, is unreasonably prolonged under the specific facts of her detention. (*See* Pet. ¶¶ 56–57; Reply ¶ 9). Respondent wholly fails to address this issue.[8] (*See generally* Resp.).

When an Act of Congress raises a serious constitutional problem courts, if possible, will read an implicit limitation into the statute so as to avoid constitutional invalidation. *Zadvydas*, 533 U.S. at 689. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. At the same time, [] th[e] Supreme Court has recognized

---

[7] Some district courts, contrary to the holdings of *Sylvain* and *Hosh*, hold the government must act immediately upon an alien's release, and if it does not, the detainee is held under Section 1226(a) and entitled to a bond hearing. *See Valdez v. Terry*, 874 F. Supp. 2d 1262, 1265 (D. N.M. 2012), and *Khodr v. Adduci*, 697 F. Supp. 2d 774, 779–80 (E.D. Mich. 2010). The Court is not persuaded by this minority view.

[8] Respondent only references the reasonableness of a Section 1226(c) detention in a footnote seeking leave to submit supplemental briefing on the issue if the Court reaches it. (*See* Resp. 7 n.1). Arguments made in a Petition must be addressed in the Response if they are to be addressed, and therefore the Court declines supplemental briefing. *See Nichols v. Volunteers of Am., N. Ala., Inc.*, 470 F. App'x 757, 764 (11th Cir. 2012) ("An argument not made is waived . . . . To prevail on a particular theory of liability, a party must present that argument to the district court." (citations and internal quotation marks omitted)). The adversarial system requires the parties to raise and advance their arguments as district courts "cannot concoct or resurrect arguments neither made nor advanced by the parties." *Id*. (citation and internal quotation marks omitted).

detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citation and internal quotation marks omitted). However, the Supreme Court has observed "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690.

In upholding the constitutionality of Section 1226(c) the Supreme Court noted "the detention at stake under [Section] 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Demore*, 538 U.S. at 530 (footnote call number omitted). The Supreme Court did not address what time period is reasonable for detention under Section 1226(c), but one Justice acknowledged that at some point detention under Section 1226(c) would become unreasonable. *See id.* at 532 (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident such as respondent could be entitled to an individualized determination as to [her] risk of flight and dangerousness if the continued detention [under Section 1226(c)] became unreasonable or unjustified." (citation omitted)).

Three circuit courts of appeals have addressed the issue of detention under Section 1226(c) and agree that unreasonably prolonged detention is a due process violation; in determining the point at which detention becomes unreasonably prolonged, the Ninth Circuit uses a bright-line rule while the Sixth and Third Circuits use a reasonableness test. The Ninth Circuit's bright-line rule holds aliens "who have been detained under Section 1226(c) for six months are entitled to a bond hearing." *Rodriguez v. Robbins*, 715 F.3d 1127, 1138 (9th Cir. 2013). The Sixth Circuit's reasonableness test requires courts to "examine the facts of each case, to determine whether there has been unreasonable delay in concluding removal proceedings." *Ly*

*v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003).  The Sixth Circuit identified factors suggesting unreasonable delay, including:

> (1) the overall length of detention; (2) whether the civil detention is for a longer period than the criminal sentence for the crimes resulting in the deportable status; (3) whether actual removal is reasonably foreseeable; (4) whether the immigration authority acted promptly to advance its interests; and (5) whether the petitioner engaged in dilatory tactics in the Immigration Court.

*Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 471 (D. Mass. 2010) (citing *Ly*, 351 F.3d at 271–72; other citations omitted).  The Third Circuit's reasonableness test

> is a fact dependent inquiry requiring an assessment of all of the circumstances of any given case.  That being said, we note that the reasonableness of any given detention pursuant to [Section] 1226(c) is a function of whether it is necessary to fulfill the purpose of the statute, and, given that Congress and the Supreme Court believed those purposes would be fulfilled in the vast majority of cases within a month and a half, and five months at the maximum, the constitutional case becomes more and more suspect as detention continues past those thresholds.

*Diop v. ICE/DHS*, 656 F.3d 221, 234 (3d Cir. 2011) (internal citation omitted).

Jeune has been detained under Section 1226(c) for almost seventeen months and would thus be entitled to a bond hearing under the Ninth Circuit's bright-line rule granting those aliens who have been detained under Section 1226(c) longer than six months a bond hearing.  *See Rodriguez*, 715 F.3d at 1138.  Under the reasonableness standards established by the Sixth and Third Circuit Courts of Appeals, the constitutionality of Jeune's detention under Section 1226(c) has become increasingly suspect as it is eleven times longer than the average detention period when there is not an appeal and more than three times longer than the average detention period when there is an appeal.  *See Demore*, 538 U.S. at 530.  The seventeen months of detention are much longer than Jeune's initial criminal sentence of credit time served and six months of probation.  (*See* Pet. ¶ 20).  Furthermore, the Eleventh Circuit's grant of Jeune's emergency stay of removal signals that she "has made a strong showing that [s]he is likely to succeed on the

merits" of her appeal, and thus ultimate removability is anything but certain. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation and internal quotation marks omitted). Lastly, Respondent has not shown Jeune acted in a dilatory manner. Upon weighing these factors the Court concludes that Jeune's continued mandatory detention without a bond hearing is unreasonably prolonged and a due process violation.

Since Jeune would be entitled to a bond hearing under the standards established by the Ninth, Sixth and Third Circuit Courts of Appeals, Petitioner is entitled to a bond hearing.

### IV.   CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that

1. Petitioner's Petition for Writ of Habeas Corpus **[ECF No. 1]** is **GRANTED**. The EOIR Miami Krome Immigration Court shall provide Petitioner with a bond hearing by **January 10, 2014** to determine if Petitioner poses a risk of flight or danger to the community.

2. Respondent's Motion to Dismiss **[ECF No. 8]** is **GRANTED** in part. Defendants Mark J. Moore, Field Office Director for the ICE Miami Office of Enforcement & Removal Operations; John T. Morton, Assistant Secretary of United States Immigration and Customs Enforcement; Janet Napolitano, the Secretary of the United States Department of Homeland Security; and Eric H. Holder, Jr., Attorney General of the United States Department of Justice are **DISMISSED**.

3. The Clerk is instructed to mark this case as **CLOSED**.

**DONE AND ORDERED** in Miami, Florida, this 11th day of December, 2013.

*Cecilia M. Altonaga*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

Case No. 13-22333-CIV-ALTONAGA/Simonton

cc: counsel of record
EOIR Miami Krome Immigration Court
P.O. Box 940998
Miami, Florida 33194